UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MELVIN T. JONES, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 08-2416 |
| v. | : | MEMORANDUM OPINION & ORDER |
| CITY OF ATLANTIC CITY, | : | |
| Defendant. | : | |

This matter is before the Court on cross-motions for summary judgment.  Oral argument on the motions was heard on December 14, 2010, and the record of that proceeding is incorporated here.  For the reasons expressed on the record, and those outlined below, both motions will be granted in part and denied in part.

## Background

Plaintiff Melvin Jones sustained injuries as the result of an automobile accident on July 8, 2005.  At that time, he was employed by the City of Atlantic City.  He brought this lawsuit on July 5, 2007, originally in State court, in part to seek redress from his employer for alleged violations of the New Jersey Law Against Discrimination and Family Medical Leave Act.  Plaintiff asserts that the City refused to allow him to return to work as of November 2, 2005, despite that Plaintiff gave a "full duty note" to his supervisor, David Calloway, the Director of Public Works.  The City required Plaintiff to see its own doctor before allowing him to return to work, and allegedly subjected Plaintiff to discipline and loss of employment until March 1, 2006.

Plaintiff claims that in doing so, the City retaliated against him for taking time off after the motor vehicle accident.  Plaintiff also claims that he was not notified of his FMLA rights, and that the City failed to have Plaintiff complete any FMLA

documentation.[1]  Finally, Plaintiff asserts that the City violated the NJLAD by failing to reasonably accommodate Plaintiff's serious medical condition by permitting a period of time off from work.

The City has argued that on November 3, 2005 and thereafter, Plaintiff was advised that he had to obtain clearance from the City's doctor pursuant to the City's ten-day absence policy, whereby any employee must see a City doctor after being out of work for at least ten days due to sickness or injury.  The City contends that Plaintiff refused to comply with its policy until February 28, 2006, and he was permitted to return to work the next day.  Indeed, the documents of record indicate that the City attempted to schedule an appointment for Plaintiff with its doctor for November 2005, but Plaintiff was unable to honor that appointment.  Plaintiff testified during deposition that he was fine with going to see the City doctor when he was first notified that City policy required it.  (Jones 6/22/09 Dep., p. 41.)  After the initial attempt, however, it appears that neither party took further action to obtain an appointment for Plaintiff to see the City's doctor.

Plaintiff's records also indicate that he went out sick from July 5, 2005 to July 22, 2005 (Upshaw Dep., p. 75, 77.)  He then went out on worker's compensation from July 25 to July 28, 2005.  (Upshaw Dep., p. 75.)  From July 29, 2005 until approximately November 10, 2005, Plaintiff was on sick leave.  (Upshaw Dep., p. 75, 77)  As of November 14, 2005, Plaintiff was without pay.  (Upshaw Dep., p. 75-76.)  Plaintiff has

---

[1] Plaintiff testified during his deposition, however, that he completed a form requesting unpaid FMLA leave, but he never received a response.  (Jones 6/22/09 Dep., p. 42-44.)

testified that he used sick and vacation time until it ran out, and then collected unemployment benefits. (Jones 6/22/09 Dep., p. 39-40.) At oral argument, it was confirmed that from approximately November 14, 2005 until he returned to work, Plaintiff collected unemployment compensation in the amount of approximately $500 per week.[2]

On January 30, 2006, the City filed termination charges against Plaintiff due to his continued unexcused absences for just over twelve weeks. An administrative hearing was scheduled for February 22, 2006. At that time, Plaintiff requested that he be allowed to use his accumulated sick and vacation time to cover his absence from November 2, 2005 to February 15, 2006.[3] The City states that it permitted him to do so, and after Plaintiff saw the City's doctor on February 28, 2006, he resumed his employment without any negative consequences.[4]

---

[2] Although not before the Court, it is curious that Plaintiff was able to collect unemployment benefits while not technically unemployed.

[3] Plaintiff appears to have been confused as to the source of his income during the time period at issue. He testified that he was paid worker's compensation from the time of his accident until November 2, 2005. (Jones 10/5/09 Dep., p. 79-80.) After November 2, 2005, he believed he used his sick and vacation time to continue to receive payments. (Id., p. 75-80; Jones 6/22/09 Dep., p. 36-37.) He later testified that he used sick and vacation time until it ran out, and then collected unemployment benefits for what he estimated to be a year to a year and a half. (Jones 6/22/09 Dep., p. 39-40.)

[4] At the time of the accident, Plaintiff was a Sanitation Supervisor, and he held that same title as of the date of his deposition, October 5, 2009. (Jones 10/5/09 Dep., p. 70.) In addition, he has received a raise every year. (Id., p. 80.)

**Discussion**

**A. Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.      The Family and Medical Leave Act**

   1.     Generally

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, ("FMLA") was enacted to provide leave for workers whose personal or medical circumstances require that they take time off from work in excess of what their employers are willing or able to

provide. Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following certain events: a serious medical condition; a family member's serious illness; the arrival of a new son or daughter; or certain exigencies arising out of a family member's service in the armed forces. 29 U.S.C. § 2612(a)(1). During the 12 week leave period, the employer must maintain the employee's group health coverage. § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); and to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b). Violators are subject to payment of certain monetary damages and appropriate equitable relief, § 2617(a)(1). The Act provides for liquidated (double) damages where wages or benefits have been denied in violation of the Act, unless the defendant proves to the court that the violation was in good faith.

To evoke the requirement for unpaid FMLA leave, an eligible employee need not

specifically assert his rights under the Act, or even mention the Act itself.  29 C.F.R. § 825.208(a)(2).  All that is required is that the employee state an FMLA qualified reason for the leave.  Id.  "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, based on information provided by the employee."  Id. § 825.208(a).  The designation generally must be made before the leave starts, but only in limited circumstances can leave be designated as FMLA-protected after it has ended, usually within two business days.  Id. § 825.208(e).

Pursuant to the FMLA and its implementing regulations, "when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations."  29 C.F.R. § 825.301(b)(1).  This notice should contain, for example, whether the leave counts against the FMLA entitlement, whether the employee is required to provide medical certification of a serious health condition and the consequences for failure to do so, any requirement to provide a fitness for duty certificate upon restoration of employment, and the right to the same position at the end of the leave.  Id.  The employer should request certification, in most cases, prior to or immediately after leave commences, but may do so some time thereafter if there is reason to question the reason for the leave or its duration.  Id. § 825.305.

Although employers may adopt or retain leave policies more generous than any policies that comply with the requirements under the FMLA, 29 U.S.C. § 2653, the "rights established by the Act may not be diminished by any employment benefit program or plan," 29 C.F.R. § 825.700.

2.        Interference

An employer interferes with the exercise of an employee's right to unpaid leave if it fails to provide the employee who gives notice of the need for leave a written notice detailing the specific expectations and obligations of the employee and explaining any consequence of a failure to meet these obligations. See 29 U.S.C. § 2615(a)(1); Parker v. Hahnemann University Hosp., 234 F. Supp. 2d 478, 483 (D.N.J. 2002).

Further, conduct discouraging employees from taking FMLA leave has been held to constitute interference, even if the employee ends up taking the leave. For example, in Shtab v. The Greate Bay Hotel and Casino, 173 F. Supp. 2d 255 (D.N.J. 2001), the court found that an employee could establish an interference claim by proving that when he brought up the subject of FMLA leave, the employer tried to persuade him to delay the leave because it was an especially busy period.  The plaintiff did not delay the leave, and the defendant argued that there was no ground of recovery for interference because the plaintiff suffered no adverse employment action.  But the court disagreed, relying on 29 C.F.R. §  825.220 (b), which  defines "interference" as including "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." See also Williams v. Shenango, Inc., 986 F. Supp. 309, 320-21 (W.D. Pa. 1997) (employer's motion for summary judgment denied where "reasonable persons could conclude that the initial denial of leave and the suggestion of rescheduling leave may, in fact, constitute 'interference with' FMLA rights").

In 2006, Judge Simandle found that an employer interfered with the FMLA rights of its employee by refusing to allow the employee to return to work after a medical leave of absence, despite that his doctor provided medical clearance, unless and until the

8

employee provided more detailed medical documentation.  See Curcio v. Collingswood Bd. of Ed., 2006 WL 1806455 (D.N.J. June 28, 2006).  In an unpublished decision, the Third Circuit intimated that an employer must have a reasonable belief that an employee's ongoing limitations may limit his ability to work in order to require an employee to undergo a medical examination.  Ward v. Merck & Co., 226 Fed. Appx. 131 (3d Cir. 2007).  "[F]or the employer to justify the fitness-for-duty evaluation, it 'must show that the asserted 'business necessity' is vital to business.  For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism'" Id. at 140 (quoting Convoy v. New York State Dept. Of Correctional Serve., 333 F.3d 88, 98 (2d Cir. 2003)).

    3.    Retaliation

To establish a prima facie claim of retaliation for requesting FMLA leave, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave.  Cognoscenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  "[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

**C. Analysis**

Plaintiff's main argument seems to be that by requiring an employee to undergo a functional capacity test or see a doctor for clearance to return to work, the City imposed a directive which was more rigidly restrictive than the FMLA.  In doing so, Plaintiff contends that the City's procedure put a chilling effect upon the usage of up to twelve

9

weeks of FMLA leave.  Further, the City's Practices & Procedures Handbook in effect in 2005 contains no language as to the FMLA.  Indeed, the personnel policies and procedures manual in effect in 2005 had not been updated since its November 27, 1992 adoption, despite the passage of the FMLA in 1993.  (Upshaw Dep., p. 60.)

Plaintiff also points out that the City attempted to terminate him while out on what should have been deemed FMLA-protected leave due to the fact that he was classified as "no call/no show" and he suffered a change in conditions because he was assigned less attractive work hours effective November 1, 2005.  He claims damages from November 3, 2005 until March 1, 2006.

When the Court inquired at oral argument as to exactly what the Plaintiff was seeking in damages, counsel advised that Plaintiff sought wages for the time period that he was "unlawfully held out of work," from November 2, 2005 to approximately March 1, 2006, less the unemployment benefits that Plaintiff received for that time period, even though Plaintiff did not work during those weeks.

The City acknowledges that Plaintiff was eligible for FMLA leave, but argues that it fully accommodated Plaintiff by honoring his requests for time off due to his injuries.  Further, the City contends that this matter should have been settled in February 2006 when it agreed to cease termination proceedings against Plaintiff in exchange for Plaintiff seeing the City's doctor.

It appears that the City likely violated Plaintiff's rights under the FMLA, at the very least by failing to inform Plaintiff of his FMLA rights and obligations, but there is no evidence in the record of any damages that the City's actions caused the Plaintiff.  29 U.S.C.§ 2617(a)(1) provides the following damages for an employee against an employer

10

who violates the FMLA:

> Any employer who violates section 105 [29 U.S.C. § 2615] shall be liable to any eligible employee affected (A) for damages equal to--
> (I) the amount of--
>> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
>
> (ii) the interest on the amount described in clause (I) calculated at the prevailing rate; and
> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii), except that if an employer . . . proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the FMLA], such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (I) and (ii), respectively[.]

Section 2617(a)(1)(B) authorizes the court to award "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." Nominal damages are not available under the FMLA, nor are damages for mental or emotional distress or pain and suffering.[5]

Although Plaintiff has defined the damages period as November 3, 2005 through March 1, 2006, he has not proven, by a preponderance of the evidence, that he lost any wages or benefits during that period. Further, Plaintiff has not shown any other monetary losses sustained as a direct result of the City's violation of the FMLA. See 29 U.S.C. § 2617(a). Ultimately, it appears that Plaintiff suffered no adverse consequences

---

[5]Accordingly, because Plaintiff's counsel asserted at oral argument that Plaintiff sought only nominal damages for retaliation, summary judgment will be granted for the Defendant on that claim.

from taking leave for his injuries from July 2005 through February 2006, approximately 26 weeks. He did utilize his sick and vacation time, but the City was not obligated under the FMLA to pay Plaintiff for any leave time.

After oral argument, the Court directed Plaintiff's counsel to set forth a detailed accounting of damages claimed, along with supporting documents. With such confusion in the record as to damages, however, the Court cannot grant summary judgment for the Plaintiff at this time. If the parties are able to supplement the record with credible evidence of any damages, or lack thereof, the Court is willing to reconsider the damages question through a renewed motion.

Plaintiff's claim that the City violated the NJLAD by failing to reasonably accommodate Plaintiff's serious medical condition by permitting a period of time off from work was not argued by either side, and cannot be sustained in light of the fact that the City allowed Plaintiff time off from July 2005 through February 2006.

## Conclusion

For these reasons, as well as those articulated on the record December 14, 2010,

IT IS ORDERED this 17th day of December, 2010, that Plaintiff's motion for summary judgment [27] is hereby GRANTED IN PART as to the claim of interference, but DENIED as to the question of damages.

IT IS FURTHER ORDERED that Defendant's cross-motion for summary judgment [29, 30] is hereby GRANTED IN PART as to the claims of retaliation and violation of the NJLAD, but DENIED in all other respects.

                                                                           /s/ Joseph H. Rodriguez
                                                                           JOSEPH H. RODRIGUEZ
                                                                                 U.S.D.J.